**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JORDAN GUNTER** | § | |
| | § | |
| **V.** | § | **A-17-CV-0136-RP** |
| | § | |
| **DARBY WHEELER, et al.** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

The undersigned Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates.

Before the Court is Plaintiff's complaint (Dkt. No. 1). Plaintiff is pro se and has been granted leave to proceed in this case *in forma pauperis*. For the reasons set forth below, the undersigned recommends that the Complaint be **dismissed with prejudice**.

## STATEMENT OF THE CASE

Plaintiff is confined in the United States Penitentiary in Pine Knot, Kentucky. Named as defendants in this matter are Darby Wheeler, an employee of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), Duane Collins, an employee of the Transportation Security Administration ("TSA"), and federal agencies the ATF, and the TSA. Plaintiff alleges a cause of action arising in Pflugerville, Travis County, Texas.

Plaintiff alleges Defendant Wheeler violated Plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures when he obtained a search warrant for Plaintiff's Pflugerville

residence based on "evidence illegally seized by a local police department." (Dkt. No. 1 at 3). Plaintiff further alleges that Defendant Wheeler obtained a warrant to arrest Plaintiff based on information he knew to be false. (Dkt. No. 1 at 4).[1] Plaintiff alleges that, during the execution of the search warrant on February 23, 2016, Defendants Collins and Wheeler exceeded the scope of the search warrant by seizing items not specified in the warrant. (Dkt. No. 1 at 4-5; Dkt. No. 1-1 at 3). Plaintiff further alleges that he was not shown the affidavit in support of the search warrant, and that the warrant did not specify the location and description of property to be searched or the person or property to be seized with particularity. (Dkt. No. 1 at 5-6). Plaintiff asserts that because he was not provided with the affidavit supporting the warrant or the attachments to the warrant, the warrant was "plainly invalid," citing *Groh v. Ramirez*, 540 U.S. 551 (2004) (Dkt. No. 1 at 6**)**. Plaintiff alleges the ATF and the TSA are liable for the violation of his Fourth Amendment rights because Collins and Wheeler were acting under the color of law as agents of TSA and ATF. (Dkt. No. 1 at 9).

With regard to damages, Plaintiff alleges that, "[i]n detrimental reliance on incompetent counsel, in addition to the fruits of the illegally seized evidence being used against [him], [he] unknowingly and non-intelligently entered a guilty plea to the indictment, and was sentenced to imprisonment." (Dkt. No. 1 at 6).[2] Plaintiff seeks monetary damages related to depression and

---

[1] Plaintiff alleges the search warrant was "based off evidence illegally seized by a local police department,"and that Defendant Wheeler "recklessly [proffered] said evidence while knowing the seizure to have been wholly illegal." (Dkt. No. 1 at 3). Plaintiff asserts a firearm was illegally seized by the "City of Pearsall" when he was "on-duty, in full uniform, as a command-level officer of the local county jail" and, accordingly, that he was "exempt from prohibited status pursuant to 18 U.S.C. § 925." (Dkt. No. 1 at 8).

[2] The Court takes judicial notice of the pleadings and orders in *United States v. Bautista Gunter*, No. 5:16-CR-1076 DAE. *See* Fed. R. Evid. 201(b). On February 23, 2016, an arrest warrant was executed on Plaintiff, who was eventually charged with unlawful transportation of firearms, being a prohibited person in possession of a firearm, attempt to carry a weapon on an aircraft, and making a false statement to a department or agency of the United States. Plaintiff pled guilty to being a prohibited person in possession of a firearm and attempt to carry a weapon on an aircraft, and was sentenced to an aggregate term of 65

fatigue, and asserts that he has been unjustly imprisoned. (Dkt. No. 1 at 7-9). Plaintiff seeks

monetary damages in the amount of $300,000 for lost past and future income; $150,000 for his loss

of tangible assets; $100,000 for pain and suffering; $50,000 in legal expenses, and $300,000 in

punitive damages.

Plaintiff also seeks declaratory and injunctive relief, asking for: "Declaratory Judgment,"[3]

"Writ of Prohibition," "Relief from unlawful conversion," "Emergency/Temporary Injunctive

Relief," and "Future equitable or extraordinary relief." (Dkt. No. 1 at 10).

## DISCUSSION AND ANALYSIS

### A.   Screening of the Complaint under 28 U.S.C. §§ 1915 & 1915A

The Court has permitted Plaintiff to proceed *in forma pauperis*. His Complaint is thus subject

to sua sponte dismissal under 28 U.S.C. § 1915(e)(2). And, as a federal prisoner seeking redress from

an officer or employee of a governmental entity, Plaintiff's Complaint is also subject to preliminary

screening pursuant to 28 U.S.C. § 1915A, regardless of whether he proceeds *in forma pauperis*.

*Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998). Pursuant to both § 1915(e)(2) and § 1915A,

the Court must dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious,

---

months' imprisonment. Plaintiff's appeal in that matter is pending before the Fifth Circuit Court of Appeals. Plaintiff asserted in his complaint (filed in February 2017) that his "conviction [for violation of section 922(g)(1)] is almost certainly to be vacated within a month's time." (Dkt. No. 1-1 at 6-7).

[3] Plaintiff appears to seek a declaratory judgment that 28 U.S.C. § 922(g)(1) is unconstitutional as applied to Plaintiff, citing *Heller*, (presumably *District of Columbia v. Heller*, 554 U.S. 570 (2008)), and *Binderup v. Attorney General, United States of America*, 836 F.3d 336 (3d Cir. 2016), *petition for cert. filed*, (U.S. Jan. 5, 2017) (No. 16-847), a case decided in September of 2016, after the entry of his guilty plea on May 16, 2016. (Dkt. No. 1-1 at 5-6). In *Binderup*, a divided court determined that a Pennsylvania misdemeanor conviction for corrupting a minor and a Maryland misdemeanor conviction for carrying a handgun without a license were not serious enough to strip the defendants of their Second Amendment rights by finding them guilty of violating section 922(g). The court noted section 921(a)(20)(B) exempts from section 922(g) state-law misdemeanors punishable by less than two years' imprisonment. 836 F.3d at 351-52.

or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013); *Martin*, 156 F.3d at 579-80. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory," "or on a close but ultimately unavailing one." *Id.* at 327. When reviewing a pro se plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008).

### B. Sufficiency of the Complaint

Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . ." *Id.* at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* at 679. Accordingly, the Court must initially identify which portion of the pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations, and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.'" *Id.* (internal quotations omitted).

C.    ***Bivens v. Six Unknown Federal Narcotics Agents***

Plaintiff files his Complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court held that an individual injured by a federal agent's alleged violation of the individual's constitutional rights may bring an action for damages against the agent, providing deterrence against and relief for the deprivation of federally guaranteed rights caused by a person acting under color of federal law. A *Bivens* action mirrors those brought pursuant to 42 U.S.C. § 1983, which applies to a person acting under color of state law. *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005). To state a *Bivens* claim, Plaintiff must allege sufficient facts to establish that the Defendants are federal actors and that the Defendants, while acting under color of federal law, violated Plaintiff's rights under the Constitution or laws of the United States. *Bivens*, 403 U.S. at 395-96. *Bivens* provides a cause of action against federal agents only in their individual capacities and requires a showing of personal involvement. *Correctional Serv. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).

Plaintiff alleges the ATF and the TSA are liable for the violation of his Fourth Amendment rights because Defendants Collins and Wheeler were acting under the color of law as agents of TSA and ATF. (Dkt. No. 1 at 9). Because federal agencies are not entities which may be sued pursuant

to *Bivens*, Defendant Bureau of Alcohol, Tobacco, and Firearms and Defendant Transportation Security Agency must be dismissed as defendants in this matter. *Malesko*, 534 U.S. at 71-72; *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994).

Additionally, claims for declaratory and injunctive relief which, if granted, would result in the Court mandating official government action, are not cognizable in a *Bivens* action. *Malesko*, 534 U.S. at 74; *Solida v. McKelvey*, 820 F.3d 1090, 1094-95 (9th Cir. 2016); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). *See also Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1131 (5th Cir. 1987) (holding that a federal prisoner could not attack the constitutionality of his conviction in a *Bivens* action when he had not ascertained the validity of the conviction in a section 2255 action). Accordingly, Plaintiff's claims for declaratory and injunctive relief are barred, and they are additionally barred by the doctrine of *Heck v. Humphrey*, as more thoroughly explained below.

### D.    Claims barred by *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 486 (1994), the Supreme Court held that a claim that effectively attacks the constitutionality of a conviction or imprisonment is not cognizable under § 1983 and does not accrue until that conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. The doctrine established in *Heck* applies to *Bivens* actions. *Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994).

Accordingly, when success in a civil "damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."

*Muhammad v. Close*, 540 U.S. 749, 751 (2004). The *Heck* rationale has been extended to civil rights actions seeking declaratory or injunctive relief as well as monetary damages. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Clarke v. Stalder*, 154 F.3d 186, 190-91 (5th Cir. 1998). Accordingly, to the extent that Plaintiff seeks declaratory or injunctive relief regarding his conviction for attempting to bring a firearm on an airplane or for being a prohibited possessor of a firearm, his claims are barred by *Heck*. However, because the evidence seized during the search of Plaintiff's home was not the only evidence supporting his guilt in his criminal proceedings, his challenge to the execution of the warrant does not necessarily imply the invalidity of his conviction and, therefore, the claims regarding the search warrant are not barred by *Heck*.

### E.      The validity of the search warrant

Plaintiff alleges that Defendant Wheeler, at the urging of Defendant Collins, obtained a warrant to arrest Plaintiff based on information he knew to be false, and that Defendant Wheeler used that arrest warrant to "substantiate" the application for the search warrant. (Dkt. No. 1 at 4).

A federal criminal complaint against Plaintiff was filed on February 18, 2016, the day before the search warrant was issued, alleging Plaintiff had violated 18 U.S.C. § 922(g)(1)– that complaint was signed by a United States Magistrate Judge and an arrest warrant was issued, and the complaint and warrant were sealed. (*United States v. Gunter*, No. 5:16-CR-00176-DAE, at Dkt. No. 2,Dkt. No. 3, Dkt. No. 4). Prior to the filing of the complaint, Plaintiff was being investigated by Defendant Collins as a person "who had impersonated being a law enforcement officer on multiple occasions in various airports while carrying a firearm." (*United States v. Gunter*, Dkt. No. 3 at 2). The affidavit in support of the arrest warrant stated that Defendant Wheeler had contacted the Circuit Court of Maryland for Washington County and confirmed that, in 2010, Plaintiff had pleaded guilty to a

violation of a state statute criminalizing possession of a concealed deadly weapon, a misdemeanor. *Id.* Plaintiff was sentenced to a term of three years imprisonment, although the sentence was suspended and Plaintiff was placed on probation, and Plaintiff later violated probation. *Id.* The affidavit further noted that, after moving to Texas from Massachusetts, Plaintiff had "obtained a contract to operate and provide personnel for the facility management of the Frio County Jail," and that "Frio County officials and law enforcement officers were led to believe that [Plaintiff] was a commissioned Law Enforcement Officer (LEO). He is not." *Id.* The affidavit states that, on or about January 10, 2016, the Pearsall Police Department determined that Plaintiff was not a LEO and not licensed to carry firearms, and they seized a Glock pistol and "law enforcement tactical gear" from Plaintiff. (*United States v. Gunter*, Dkt. No. 3 at 3).

Plaintiff alleges that, on January 10, 2016, the Pearsall police "illegally seized a firearm and other equipment from Plaintiff." (Dkt. No. 1-1 at 1). Plaintiff alleges he was not arrested, although he was told there was probable cause to suspect he had violated state statutes by unlawfully carrying a weapon and impersonated a peace officer. (Dkt. No. 1-1 at 1-2). Plaintiff notes that he was indicted on a charge of impersonating a public servant on January 29, 2016. (Dkt. No. 1-1 at 2). Plaintiff avers that "The county case was subsequently terminated for *Brady* issues." *Id.* Plaintiff asserts that he was not a prohibited possessor of a firearm as that term is defined by section 922(g), and was not "impersonating" a police officer because, he alleges, he was at that time an "on-duty corrections official." (Dkt. No. 1 at 3; Dkt. No. 1-1 at 1-2). Accordingly, Plaintiff argues, the statement by Defendant Wheeler in the affidavit for the arrest warrant, that Plaintiff had been identified by the Pearsall Police Department as a prohibited possessor and as impersonating a peace officer, was knowingly false. (Dkt. No. 1 at 4).

The search warrant challenged by Plaintiff was issued in Case Number 1:16-mj-00122-ML, *United States v. 16201 Malden Dr. Pflugerville, TX*, in the United States District Court for the Western District of Texas. The application for the search warrant (Dkt. No. 1-1 in No. 16-mj-00122), indicates that the search was related to a violation of 18 U.S.C. § 922(g)(1), the statute governing the crime of being a Prohibited Person in Possession of a Firearm. The application for the warrant was docketed and the warrant issued on February 19, 2016, and the warrant was sealed that same date. (Dkt. No. 3 in No. 16-mj-00122). On March 1, 2016, the search warrant was returned as executed on February 23, 2016. (Dkt. No. 4 in No. 16-mj-00122). After the search was concluded, "[Plaintiff] was arrested on the Federal warrant[4] and transported to the U.S. Marshals Service in Austin for processing . . . A copy of the search warrant was provided to [Plaintiff] and an inventory of items seized left at the residence." (Dkt. No. 1-2 (attachment to Plaintiff's Complaint) at 8).

The affidavit in support of the search warrant alleged that, after being convicted of possession of a concealed deadly weapon in Maryland and sentenced to a suspected sentence of three years incarceration and placed on probation, Plaintiff violated the terms of probation by possessing a "'tactical vest' as a bouncer," and his sentence was modified to two years of supervised probation. (Dkt. No. 1-1 at 2 in No. 16-mj-00122). The affiant had "confirmed with ATF Regional Counsel in Maryland that the above listed misdemeanor offense prohibited [Plaintiff] from possessing firearms." *Id.* The affidavit in support of the search warrant noted that, between January 10, 2016, and February 2, 2016, Plaintiff had been arrested in Frio County on a charge of impersonating a police officer, and that the conditions of his release bond in that matter "specifically" prohibited him from

---

[4] Also attached to the Complaint is a page of an affidavit seeking a warrant of arrest signed by Defendant Wheeler, and signed by United States Magistrate Judge Henry Bemporad on February 18, 2016.

"possessing any law enforcement equipment, uniforms, and tactical gear, but did not require him to turn in such items." (Dkt. No. 1-1 at 3 in No. 16-mj-00122-ML). Additionally, the affidavit noted that TSA officials had investigated reports that Plaintiff had carried guns in various airports while transporting prisoners on behalf of the Frio County Sheriff's Office, although Plaintiff was not a sworn officer in Frio County, and was not authorized to carry a weapon. *Id.* Defendant Wheeler's search of the TSA database of state and local law enforcement officers authorized to fly armed, indicated that Plaintiff had, on nine occasions, traveled on a commercial airline as an armed law enforcement officer, using fraudulent credentials identifying him as a Texas Peace Officer authorized to fly armed with a weapon. (Dkt. No. 1-1 at 4 in No. 16-mj-00122-ML). On six occasions Plaintiff had fraudulently affirmed that he had completed the required training for a law enforcement officer to fly armed. *Id.* Three prisoners who were transported by aircraft accompanied by Plaintiff, "confirmed seeing [Plaintiff's] handgun during their transport aboard commercial aircraft, and they confirmed that [Plaintiff] provided credentials to TSA allowing him to sign in to the secure area of the airport (circumventing security) as an armed LEO." *Id.*

Defendant Wheeler further swore that he obtained records from a licensed gun dealer showing that, between October of 2015 and December of 2016, Plaintiff had purchased firearms from that dealer, including five Glock pistols, a Sig Sauer pistol, and a Smith & Weston pistol. (Dkt. No. 1-1 at 4-5 in No. 16-mj-00122-ML). At the time the arrest and search warrants were issued, two of these weapons had been seized by police—the other weapons were seized during the execution of the search warrant at Plaintiff's residence. (Dkt. No. 1-1 at 5; Dkt. No. 4 at 3-4 in No. 16-mj-00122-ML). Defendant Wheeler averred in the search warrant affidavit that, pursuant to his investigation, he believed Plaintiff was a prohibited person in possession of firearms, and that he had

falsely represented himself as being a law enforcement officer and thereby gained access by false pretenses to secure areas of several airports. (Dkt. No. 1-1 at 6 in No. 16-mj-00122-ML).

None of the material statements made by Defendant Wheeler in the affidavit for the search warrant or the affidavit in support of the arrest warrant were made with "reckless disregard or intentional falsity," *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012), and, accordingly, Plaintiff has failed to state a claim for relief in this regard. *Turpin v. County of Rock*, 262 F.3d 779, 783 (8th Cir. 2001) (holding only an affidavit for a search warrant containing materially false statements or omissions, knowingly or recklessly made in conscious disregard for truth, violate the Fourth Amendment). Additionally, if the affidavits are read without the allegedly false statement regarding Plaintiff's action of impersonating a peace officer as delineated by the Pearsall Police Department, there is still probable cause for issuance of the warrants. *Id.*; *Walden v. Carmack*, 156 F.3d 861, 871 (8th Cir. 1998) (holding that, if a search warrant application or affidavit contains errors reflecting deliberate falsehoods or reckless disregard for the truth, the court must set aside those statements and review the remaining portions to see if probable cause is established).

Accordingly, even eliminating that portion of the affidavit challenged by Plaintiff, i.e., the statements with regard to Plaintiff's arrest by the Pearsall Police Department and his arrest on charges of impersonating a public servant, the affidavits in support of the arrest warrant and search warrant supplied sufficient probable cause for the warrants to issue. Therefore, Plaintiff has not stated a legitimate claim that his Fourth Amendment rights were violated by Defendant Wheeler with regard to statements made in the affidavits seeking an arrest warrant and a search warrant.

### F.    The execution of the warrant

Plaintiff alleges that, during the execution of the search warrant on February 23, 2016, Defendants Collins and Wheeler exceeded the scope of the warrant by seizing items not specified in the warrant; i.e., body armor, a Taser, Plaintiff's company paperwork, company ID cards, a digital radio, and "company patches/badges." (Dkt. No. 1 at 4-5; Dkt. No. 1-1 at 3).

Attached to Plaintiff's Complaint is a Search and Seizure Warrant, signed by a Federal Magistrate Judge on February 19, 2016. (Dkt. No. 1-2 at 7). The warrant states on its face that the place to be searched is "16201 Malden Dr, Pflugerville, Texas," and references an "Attachment A" with regard to the property to be searched, and an "Attachment B" as specifying the property to be seized. (Dkt. No. 1-2 at 7). "Attachment B" (Dkt. No. 1-2 at 6) lists:

> Firearms; ammunition; and other evidence pertaining to the possession of firearms or ammunition, including . . . ammunition magazines, records and receipts indicating the purchase, repair, receipt, sale or possession of firearms . . . possession of law enforcement credentials, identification, insignia and other police accessories that he had used to falsely indicate he was a LEO and all other fruits and instrumentalities of a violation of 18 U.S.C. § 922(g)(1) . . . and for any documents that establish the persons who have control over property and vehicles searched and from which evidence is seized, such as: personal mail . . . personal identification . . .

(Dkt. No. 1-2 at 6).

Attached to the Complaint is a search warrant return document averring that the search included the kitchen, from which a firearm and body armor "with badge and ammunition" were seized, and an automobile, from which "Shotgun shells, peace officer paperwork and [a] Taser" were retrieved. (Dkt. No. 1-2 at 8). The inventory of the seized property lists six firearms, a Motorola radio, "Assorted ammunition in various calibers, Assorted firearm magazines, Assorted ID's, badges,

patches, paperwork associated with PSP business," "One Ballistic vest w/badge," "One Taser," two tax forms in Plaintiff's name, and "Assorted Ammo from portable safe." (Dkt. No. 1-2 at 5).

Body armor, a digital radio, and a Taser, could all logically be categorized as "police accessories;" and company badges, paperwork, and ID cards, could all logically be categorized as "law enforcement credentials, identification, [and] insignia" and/or "records and receipts indicating the purchase . . . sale or possession of firearms . . . and other financial records." Accordingly, the specific items cited by Plaintiff as being seized outside the scope of the warrant were not outside the scope of the warrant, and this claim is frivolous and must be dismissed.

## G. Particularity

The remaining claim in the Complaint is Plaintiff's claim that his Fourth Amendment right to be free of an unreasonable search and seizure was violated because he was not provided with the affidavit in support of the search warrant or the attachments which were incorporated by reference in the search warrant.

> In *Bivens*, the Supreme Court held that individuals could "recover money damages for any injuries [they have] suffered as a result of [a federal agent's] violation of the [Constitution]." 403 U.S. at 397, 91 S.Ct. 1999. As with § 1983 actions against state and local officials, the Court has held that a claimant seeking relief under *Bivens* must overcome the federal official's qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To overcome that immunity, claimants must show (1) that the agents violated their constitutional rights and (2) that the constitutional right at issue is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151 (quotations omitted); *see Flaskamp v. Dearborn Pub. Schs.*, 385 F.3d 935, 940-41 (6th Cir. 2004).

*Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 438 (6th Cir. 2006).

Plaintiff alleges that he was not shown the affidavit in support of the search warrant, and that the warrant did not specify the location and description of the property to be searched or the property to be seized. (Dkt. No. 1 at 5-6). Plaintiff alleges that, although he was shown the "face sheet" of the warrant, the incorporated attachments were not provided to Plaintiff. (Dkt. No. 1 at 5). Plaintiff contends that, because he was not provided with the affidavit supporting the warrant or the attachments to the warrant, the warrant was "plainly invalid," citing *Groh v. Ramirez*, 540 U.S. 551 (2004). (Dkt. No. 1 at 6**)**. Plaintiff alleges that, "For this warrant to have been legally sufficient, the supporting scope documents (whether an affidavit, supplement, or otherwise) must accompany the warrant at execution." (Dkt. No. 1-1 at 4).

Attachment A to the application for the warrant lists the place to be searched as Plaintiff's "residence located at 16201 Malfen Dr., Pflugerville, Texas . . . single story residence with tan brick and tan siding . . . and a dark brown garage door . . . The request to search includes the curtilage and all outbuildings as well as al vehicles with an affirmative link to [Plaintiff] that are on the property or immediately adjacent to the property." (Dkt. No. 1-1 at 7 in 16-mj-00122-ML). As noted above, Attachment B lists the items to be seized as "Firearms . . . and other evidence pertaining to the possession of firearms or ammunition, . . . possession of law enforcement credentials, identification, insignia and other police accessories that [Plaintiff] had used to falsely indicate he was a LEO and all other fruits and instrumentalities of a violation of 18 U.S.C. § 922(g)(1) . . ." (Dkt. No. 1-1 at 8 in 16-mj-00122-ML).

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized. The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the

requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.

*Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987) (internal quotations omitted).

Plaintiff relies on the Supreme Court's opinion in *Groh v. Ramirez*, 540 U.S. 551 (2004), for his entitlement to relief. In *Groh,* the Supreme Court found a search unconstitutional because the warrant contained a facial "glaring deficiency," recognizable by "any reasonable police officer." 540 U.S. at 564. In the section of the warrant calling for "a description of the 'person or property' to be seized," *id.* at 554, the agent had inadvertently typed "single dwelling . . . blue in color." *Id.* at 554 n.2. When the magistrate signed the warrant, this description was the only description of the items that could be seized. *Id.* Such a warrant, the Supreme Court concluded, was "facial[ly] invalid[ ]," *id.* at 557, and, because "the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Id.* at 563. Absent any evidence on the face of the warrant that it incorporated the attached affidavit, the Supreme Court concluded, the warrant was "manifestly invalid," and the search "warrantless" and thus "constitutionally fatal." *Id.* at 564. The *Groh* court determined: "The law permits an affidavit incorporated by reference to amplify particularity, notwithstanding that, by its terms, the Fourth Amendment 'requires particularity in the warrant, not in the supporting documents.'" *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012), *quoting Groh*, 540 U.S. at 557-58.

Interpreting the holding in *Groh*, the Sixth Circuit Court of Appeals concluded:

> No doubt, "[t]he fact that the application adequately described the 'things to be seized' does not save the warrant" from the risk of facial invalidity because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh*, 540 U.S. at 557, 124 S.Ct. 1284. But, as *Groh* explained, "We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents." *Id.* And "[i]ndeed," as *Groh* further recognized, "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* at 557-58, 124 S.Ct. 1284.What doomed the warrant in *Groh* was not the existence of a supporting affidavit that particularly described the items to be seized, but the failure of the warrant to cross-reference the affidavit at all.

*Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 439 (6th Cir. 2006). When deciding whether a warrant was validly executed when the incorporated affidavits and attachments were not provided to the subject of the search at the time of the search, the Sixth Circuit specifically noted that, "nothing about the text of the [Warrant] clause suggests that a warrant valid upon issuance may become invalid upon execution when the scope and timing of the search is conducted in accordance with the terms of the warrant." *Id.* at 441. The Sixth Circuit noted that the precise issue in *Groh* was the facial insufficiency of the warrant, "not the failure to incorporate the affidavit *and* bring it during the search." *Id.* at 443 (emphasis in original).

The question before the en banc Sixth Circuit in *Baranski* was precisely the same question presented herein: for a search to be deemed reasonable, pursuant to the Fourth Amendment, must the affidavit and/or attachment incorporated into the search warrant be given to an occupant at the outset of the search and/or accompany the agents during the search. 452 F.3d at 441-43. In a thorough and well-reasoned opinion, the Sixth Circuit's answer to this question was "no." *Id.* The

undersigned notes that an application for a writ of certiorari from the decision in *Baranski* was denied. *See* 549 U.S. 1321 (2007).

The *Baranski* court noted that the *Groh* opinion "acknowledged that the Fourth Amendment *does not* compel officers to present a warrant before a search." *Id.* at 442 (emphasis in original). "And the Court disclaimed resolving whether officers must produce a warrant, to say nothing of a supporting affidavit, when the occupant requests it at the outset of the search." *Id.* ("the Court left open only the possibility that it would be 'unreasonable' to decline such a request, not that the search would become warrantless if the agents declined such a request."), *citing Groh*, 540 U.S. at 562 n.5. And, contrary to Plaintiff's assertion, the failure to provide these documents at the time of the search did not violate any alleged federal constitutional right to "monitor" the search of his residence. *See id.* at 443 ("the requirement of particular description does not protect an interest in monitoring searches."), *citing United States v. Grubbs*, 547 U.S. 90 (2006).[5] "The salient point is that *Groh* did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one." *Id.* at 444.

The opinion in *Groh* has not been broadly cited in opinions in section 1983 or *Bivens* cases. The *Groh* opinion was cited as relevant to the holdings in the published opinions in: *United States v. Franz*, 772 F.3d 134 (3d Cir. 2014) (suppression not warranted when a list of items to be seized did not appear on the face of the warrant because the list was sealed, although this violated the Fourth Amendment, because the officer acted in good faith); *United States v. Rosa*, 626 F.3d 56 (2d Cir. 2010) (holding that unincorporated and unattached supporting documents do not cure an

---

[5] In *United States v. Grubbs*, the Supreme Court noted that "neither the Fourth Amendment nor" the Federal Rules of Criminal Procedure impose the requirement that "an executing officer must present the property owner with a copy of the warrant before conducting the search." 547 U.S. 90, 98-99 (2006).

otherwise defective search warrant); *United States v. Hamilton*, 591 F.3d 1017 (8th Cir. 2010) (holding a search warrant was valid where it incorporated an attached affidavit); *United States v. Waker*, 534 F.3d 168 (2d Cir. 2008) (finding a warrant valid where an affidavit was incorporated in and attached to the warrant); *United States v. Cazares-Olivas*, 515 F.3d 726 (7th Cir. 2008) (holding that the Fourth Amendment does not require the officers to carry or display a paper warrant); *United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006) (upholding a search where the warrant did not explicitly incorporate an attached affidavit); *United States v. Hurwitz*, 459 F.3d 463 (4th Cir. 2006) (holding that an affidavit referenced in a search warrant supplied the necessary particularity notwithstanding the officers' failure to take the affidavit with them when executing the warrant); *Doe v. Groody*, 361 F.3d 232 (3d Cir. 2004) (noting that a warrant may be construed in light of an accompanying affidavit incorporated within the warrant).

The Fifth Circuit Court of Appeals has cited *Groh* in: *United States v. Toussaint*, 838 F.3d 503, 507 (5th Cir. 2016) (citing *Groh* for the proposition that warrantless searches and seizures inside a home are presumptively unreasonable); *Trent v. Wade*, 801 F.3d 494, 495-96 (5th Cir. 2015) (denying the defendant's invitation to create a "new, *per se* exception to the knock-and-announce requirement when affirming the district court's determination that material fact issues precluded summary judgment."); *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) (quoting *Groh*: "The law permits an affidavit incorporated by reference to amplify particularity, nothwithstanding that, by its terms, the Fourth Amendment 'requires particularity in the warrant, not in the supporting documents.'" and holding that: "When viewed alongside the affidavit, the warrant's list of items to be seized is reasonably focused."); *United States v. Gray*, 669 F.3d 556, 564 (5th Cir. 2012) (citing *Groh* as describing the inquiry for good faith under the Fourth Amendment as the same as the

objective-reasonableness prong under qualified immunity), *rev'd on other grounds by* 133 S. Ct. (2012); *United States v. Allen*, 625 F.2d 830, 835 (5th Cir. 2010) (affirming the District Court's denial of a motion to suppress because, although the warrant lacked particularity, in part because the attachment detailing the items to be seized was not incorporated by reference, the officers executing the warrant were familiar with what could be seized and acted in good faith); *Hunt v. Tomplait*, 301 Fed. App'x 355, 360 (5th Cir. 2008) (holding that a search team leader has a duty to verify that the house being searched is the house specified in the warrant); *United States v. Van Meter*, 280 Fed. App'x 394, 396 (5th Cir. 2008) (upholding the denial of a motion to suppress where the items seized "all fit into Attachment B to the warrant under the section detailing the items to be seized. Attaching such an itemized list gives a warrant sufficient particularity," in a case which does not state whether the attachment was presented at the time of the search); and *United States v. Jacobs*, 125 Fed. App'x 518, 523 (5th Cir. 2005) (holding a search was not unreasonable where the warrant authorizing the search was not at the scene until ten minutes after the search began, pursuant to *Groh's* conclusion that the executing officer was not required to serve the warrant prior to commencing the search). The Fifth Circuit Court of Appeals has not cited *Baranski* in any published opinion.

As explained by the Sixth Circuit Court of Appeals in *Baranski*, the Supreme Court's decision in *Groh* does not establish the point of law relied on by Plaintiff to establish that his Fourth Amendment rights were violated by the "failure" of Defendants Wheeler and Collins to provide him with a copy of the attachments to the search warrant at the time of the search. Additionally, even if his rights were violated by this failure, the Defendants are entitled to qualified immunity on this claim because such a right was not "clearly established."

## H.    Qualified immunity

Qualified immunity is "'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Vander Zee v. Reno*, 73 F.3d 1365, 1368-69 (5th Cir. 1996). Accordingly, the Supreme Court has instructed the lower federal courts to resolve the issue of a defendant's immunity at the earliest point in litigation. *Pearson*, 555 U.S. at 237, *citing Mitchell*, 472 U.S. at 525 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Even limited discovery on the issue of qualified immunity "must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Mississippi State Emp't. Serv.*, 41 F.3d 991, 994 & n.10 (5th Cir. 1995) (emphasis in original).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted). The qualified immunity analysis asks whether, based upon the facts taken in the light most favorable to the party asserting the injury, did the officers' conduct violate a constitutional right and, if so, was that right clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 236; *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

The law must be so clear that "every reasonable officer" would have known that what he is accused of doing is a violation of the Constitution. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court held that qualified immunity is appropriate unless a precedent "squarely governs" the outcome of the case, *id.* at 201, or the case is so "obvious" that general tests clearly establish the answer, even without a body of relevant case law. *Id.* at 199. "[W]e do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (internal quotations omitted).

The constitutional question governing Defendant's liability in this matter, i.e., whether documents incorporated on the face of a search warrant must be attached to the warrant or present at the time of the search, is under debate. With regard to the precise issue in this matter, the Sixth Circuit reasoned in *Baranski* that the defendants were entitled to qualified immunity because, *inter alia*, the Eighth Circuit Court of Appeals had held in the plaintiff's criminal appeal that the defendant officers had acted in good faith in executing the subject warrant. *Baranski*, 452 F.3d at 448. The Sixth Circuit surveyed published legal opinions on point, and found a split among the Circuit Courts of Appeal that had examined the issue regarding the officers' failure to provide the plaintiff with the warrant's attachments at the time of the search. At that time, the Ninth Circuit Court of Appeals had held that "an affidavit necessary to satisfy the particularity requirement not only must be incorporated into the warrant but also much accompany the warrant at the scene." *Id.* at 449, *citing United States v. McGrew*, 122 F.3d 847, 850 (9th Cir. 1997). In 2000, in *Bartholomew v. Commonwealth of Pennsylvania*, 221 F.3d 425, 429 (3d Cir. 2000), a case wherein the material incorporated into the warrant was not provided at the time of the search because it had been sealed,

the Third Circuit Court of Appeals adopted the same rule stated in *McGrew*, but also found that the rule was not sufficiently established to deny the defendant qualified immunity on this issue.

The First, Second, Eighth, Ninth, and Tenth Circuit Court of Appeals, and the District of Columbia Circuit Court of Appeals, adhere to the rule that an affidavit or attachment providing the particularity of the warrant must be attached to the warrant or otherwise present at the time of the search. *Rosa*, 626 F.3d at 63 (2d Cir.); *McGrew*, 122 F.3d at 850 (9th Cir.); *United States v. Williamson*, 1 F.3d 1134, 1136 n.1 (10th Cir. 1993); *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987) (involving a search wherein the attachment was not incorporated into the warrant but was present at the search); *United States v. Dale*, 991 F.2d 819, 848 (D.C. Cir. 1993) ("'An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant . . . [or] is merely present at the search.'" *quoting Rickert*, 813 F.2d at 909); *United States v. Klein*, 565 F.2d 183, 193 n.3. (1st Cir. 1977). The Sixth and Seventh Circuit Court of Appeals have not adopted this requirement. *Cazares-Olivas*, 515 F.3d at 730 (7th Cir.); *Baranski*, 452 F.3d at 441-43 (6th Cir.). The Third Circuit Court of Appeals has continued to hold that, although the failure to attach the documents to the warrant violates the Fourth Amendment, the exclusionary rule does not require suppression of the evidence seized because a reasonable officer could believe that providing the documents at the time of the search is not required. *United States v. Wright*, 777 F.3d 635, 639-40 (2015).

The Fifth Circuit Court of Appeals does not appear to have addressed this precise issue. In *United States v. Beamont*, 972 F.2d 553, 561 (1992), the court held that a warrant was valid where an affidavit supplying particularity was incorporated by reference into the warrant, but only implied that the affidavit must accompany the warrant, and specifically declined to create "a technical,

bright-line rule" that "absent such an incorporation the warrant must necessarily fail," because an executing officer could, in good faith, rely on the magistrate's probable-cause determination in issuing the warrant. *Id.* In *United States v. Cherna* 184 F.3d 403, 412-13 (5th Cir. 1999) (collecting cases), the court found circuit precedent was "not clear" as to whether an affidavit must be physically attached to the warrant for the search to survive constitutional muster. In an unpublished opinion, *United States v. Wicks*, 115 Fed. App'x 648, 650 (5th Cir. 2014), the Fifth Circuit upheld denial of a motion to suppress, stating: "The failure to deliver a copy of a search warrant [incorporating an affidavit] until the day after a search will not mandate suppression under the Fourth Amendment absent a showing of prejudice."

The fact that the Circuit Courts of Appeal are not in agreement as to the "rule" governing the issue before this Court weighs in favor of finding Defendants are entitled to qualified immunity.

> But this disagreement among the circuits at the time of the search, to say nothing of the weight of the authority in our circuit and elsewhere favoring the defendants' assessment of these constitutional issues, shows that the agents did not violate clearly established law. *Wilson v. Layne*, 526 U.S. 603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (noting that when judges "disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

*Baranski*, 452 F.3d at 449.

> The central question is whether someone in the officer's position could reasonably but mistakenly conclude that his conduct complied with the Fourth Amendment. An officer might reach such a mistaken conclusion for several reasons. He may be unaware of existing law and how it should be applied. Alternatively, he may misunderstand important facts about the search and assess the legality of his conduct based on that misunderstanding. Finally, an officer may misunderstand elements of both the facts and the law. Our qualified immunity doctrine applies regardless of whether the officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Groh*, 540 U.S. at 566-67 (internal citations omitted).

The constitutional "rule" central to the finding of immunity or liability in this matter, i.e., whether a warrant is rendered invalid or not sufficiently specific because incorporated documents were not conveyed to the occupant of the dwelling to be searched at the time of the search, was not (and is not) clearly established. *Groh* did not clearly establish such a rule, and the Circuit Courts of Appeal, to the extent they have squarely addressed the precise issue, are not in agreement.

Accordingly, even if Plaintiff's Fourth Amendment rights were violated by Defendants' alleged failure to present him with the affidavit and attachments referenced in the search warrant at the time of the search, Defendants are entitled to qualified immunity on this claim for relief. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

## **RECOMMENDATION**

It is therefore recommended that Plaintiff's claims against the ATF and the TSA be dismissed with prejudice for want of jurisdiction. It is further recommended that Plaintiff's claims against Defendants Wheeler and Collins be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e). Alternatively, it is recommended that Plaintiff's claims against Defendants Wheeler and Collins be dismissed with prejudice as Defendants Wheeler and Collins are protected by qualified immunity.

It is further recommended that the Court include within its judgment a provision expressly and specifically warning Plaintiff that filing or pursuing any further frivolous lawsuits may result in (a) the imposition of court costs pursuant to Section 1915(f); (b) the imposition of significant monetary sanctions pursuant to Fed. R. Civ. P. 11; (c) the imposition of an order barring Plaintiff from filing any lawsuits in this Court without first obtaining the permission from a District Judge

of this Court or a Circuit Judge of the Fifth Circuit; or (d) the imposition of an order imposing some combination of these sanctions.

It is further recommended that Plaintiff be warned that if he files more than three actions or appeals while he is a prisoner which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). In the event this Report and Recommendation is accepted, adopted or approved, it is recommended that the Court direct the Clerk to e-mail a copy of its order and judgment to the keeper of the three-strikes list.

## OBJECTIONS

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

SIGNED this 23rd day of August, 2017.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE